UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/15/10

-----------------------------------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,    :

        Plaintiff,    :

        - against -    :

BEAR, STEARNS & CO. INC.,    :

        Defendant.    :

-----------------------------------------------------------------------X

**ORDER**

03 Civ. 2937 (WHP)

SECURITIES AND EXCHANGE COMMISSION,    :

        Plaintiff,    :

        - against -    :

J.P. MORGAN SECURITIES INC.,    :

        Defendant.    :

-----------------------------------------------------------------------X

03 Civ. 2939 (WHP)

SECURITIES AND EXCHANGE COMMISSION,    :

        Plaintiff,    :

        - against -    :

LEHMAN BROTHERS INC.,    :

        Defendant.    :

-----------------------------------------------------------------------X

03 Civ. 2940 (WHP)

SECURITIES AND EXCHANGE COMMISSION,    :

        Plaintiff,    :

        - against -    :

MERRILL LYNCH, PIERCE, FENNER & SMITH INC.,  :

        Defendant.    :

-----------------------------------------------------------------------X

03 Civ. 2941 (WHP)

-------------------------------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

             Plaintiff,

             - against -

U.S. BANCORP PIPER JAFFRAY INC.,

             Defendant.

              03 Civ. 2942 (WHP)

-------------------------------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

             Plaintiff,

             - against -

UBS SECURITIES LLC, f/k/a UBS WARBURG LLC,

             Defendant.

              03 Civ. 2943 (WHP)

-------------------------------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

             Plaintiff,

             - against -

GOLDMAN, SACHS & CO.,

             Defendant.

              03 Civ. 2944 (WHP)

-------------------------------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

             Plaintiff,

             - against -

CITIGROUP GLOBAL MARKETS INC., f/k/a
SALOMON SMITH BARNEY,

             Defendant.

              03 Civ. 2945 (WHP)

-------------------------------------------------------------------X

-----------------------------------------------------------------X
                                          :

SECURITIES AND EXCHANGE COMMISSION,      :

              Plaintiff,                   :

             - against -            :     03 Civ. 2946 (WHP)

                                            :

CREDIT SUISSE FIRST BOSTON LLC, f/k/a CREDIT  :
SUISSE FIRST BOSTON CORP.,               :

              Defendant.                 :
-----------------------------------------------------------------X
                                          :

SECURITIES AND EXCHANGE COMMISSION,      :

              Plaintiff,                   :

             - against -            :     03 Civ. 2948 (WHP)

                                            :

MORGAN STANLEY & CO. INC.,               :

              Defendant.                 :
-----------------------------------------------------------------X
                                          :

SECURITIES AND EXCHANGE COMMISSION,      :

              Plaintiff,                   :

             - against -            :     04 Civ. 6909 (WHP)

                                            :

DEUTSCHE BANK SECURITIES INC.,           :

              Defendant.                 :
-----------------------------------------------------------------X
                                          :

SECURITIES AND EXCHANGE COMMISSION,      :

              Plaintiff,                   :

             - against -            :     04 Civ. 6910 (WHP)

                                            :

THOMAS WEISEL PARTNERS LLC,          :

              Defendant.                 :
-----------------------------------------------------------------X

WILLIAM H. PAULEY III, District Judge:

On October 31, 2003, this Court entered Final Judgments against the defendant investment banks in all of the above-captioned matters excluding <u>SEC v. Deutsche Bank Securities Inc.</u>, 04 Civ. 6909 (WHP), and <u>SEC v. Thomas Weisel Partners LLC</u>, 04 Civ. 6910 (WHP). This Court entered Final Judgments against Deutsche Bank Securities Inc. and Thomas Weisel Partners LLC on September 27, 2004.

By letter, dated September 7, 2004, the parties requested a modification of Addendum A to the Final Judgments in all of the above-captioned matters ("Addendum A"), which this Court granted on September 24, 2004.

By letter, dated August 3, 2009, the parties requested further modification of Addendum A. Pursuant to the October 31, 2003 and September 27, 2004 Orders, this Court revises Addendum A as proposed by the parties with the exception of the proposed modification to Section I.10.a. The proposed modification to that section would permit, <u>inter alia</u>:

> Research personnel and Investment Banking personnel to communicate with each other, outside the presence of internal legal or compliance staff, regarding market or industry trends, conditions or developments, provided that such communications are consistent in nature with the types of communications that an analyst might have with investing customers.

Such a proposed amendment is counterintuitive and would undermine the separation between research and investment banking. On May 7, 2003, SEC Chairman William H. Donaldson emphasized the importance of that separation to the Senate Committee on Banking, Housing, and Urban Affairs when he testified: "[T]here will be no overlap between the jobs of investment bankers and research analysts. . . . To ensure that the separation between investment banking and research is comprehensive, firms will create and enforce firewalls between the two operations reasonably designed to prohibit improper communications between the two."

(http://www.sec.gov/news/testimony/ts050703whd.htm)  The parties' proposed modification would deconstruct the firewall between research analysts and investment bankers erected by the parties when they settled these actions.  This Court declines to approve the proposed modification to Section I.10.a. because it would be inconsistent with the Final Judgments and contrary to the public interest.  The revised Addendum A is attached hereto.

   The Clerk is directed to file copies of this Order in all of the related actions:

(1) <u>SEC v. Bear, Stearns & Co. Inc.</u>, 03 Civ. 2937 (WHP); (2) <u>SEC v. J.P. Morgan Securities Inc.</u>, 03 Civ. 2939 (WHP); (3) <u>SEC v. Lehman Brothers Inc.</u>, 03 Civ. 2940 (WHP); (4) <u>SEC v. U.S. Bancorp Piper Jaffray Inc.</u>, 03 Civ. 2942 (WHP); (5) <u>SEC v. UBS Securities LLC</u>, 03 Civ. 2943 (WHP); (6) <u>SEC v. Goldman, Sachs & Co.</u>, 03 Civ. 2944 (WHP); (7) <u>SEC v. Citigroup Global Markets Inc.</u>, 03 Civ. 2945 (WHP); (8) <u>SEC v. Credit Suisse First Boston LLC</u>, 03 Civ. 2946 (WHP); (9) <u>SEC v. Morgan Stanley & Co. Inc.</u>, 03 Civ. 2948 (WHP); (10) <u>SEC v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, 03 Civ. 2941 (WHP); (11) <u>SEC v. Deutsche Bank Securities Inc.</u>, 04 Civ. 6909 (WHP); and (12) <u>SEC v. Thomas Weisel Partners LLC</u>, 04 Civ. 6910 (WHP).

Dated: March 15, 2010
  New York, New York

     SO ORDERED:

        WILLIAM H. PAULEY III
          U.S.D.J.

## Addendum A

Modification approved by Judge William H. Pauley III on March 15, 2010

## Undertakings

The firm shall comply with the following undertakings:

## I.     Separation of Research and Investment Banking

1. Definitions

   a. As used throughout this Addendum, the term "firm" means the Defendant, Defendant's successors and assigns (which, for these purposes, shall include a successor or assign to Defendant's investment banking and research operations), and their affiliates, other than "exempt investment adviser affiliates."

   b. As used throughout this Addendum, the term "exempt investment adviser affiliate" means an investment adviser affiliate (including, for these purposes, a separately identifiable department or division that is principally engaged in the provision of investment advice to managed accounts as governed by the Investment Advisers Act of 1940 or investment companies under the Investment Company Act of 1940) having no officers (or persons performing similar functions) or employees in common with the firm (which, for purposes of this Section I.1.b, shall not include the investment adviser affiliate) who can influence the activities of the firm's Research personnel or the content of the firm's research reports; provided that the firm (i) maintains and enforces written policies and procedures reasonably designed to prevent the firm, any controlling persons, officers (or persons performing similar functions), or employees of the firm from influencing or seeking to influence the activities of Research personnel of, or the content of research reports prepared by, the investment adviser affiliate; (ii) obtains an annual independent assessment of the operation of such policies and procedures; and (iii) does not furnish to its customers research reports prepared by the investment adviser affiliate or otherwise use such investment adviser affiliate to do indirectly what the firm may not do directly under this Addendum.

c.  As used throughout this Addendum, the term "Investment Banking" means all firm personnel engaged principally in investment banking activities, including the solicitation of issuers and structuring of public offering and other investment banking transactions.  It also includes all firm personnel who are directly or indirectly supervised by such persons and all personnel who directly or indirectly supervise such persons, up to and including Investment Banking management.

d.  As used throughout this Addendum, the term "Research" means all firm personnel engaged principally in the preparation and/or publication of research reports, including firm personnel who are directly or indirectly supervised by such persons and those who directly or indirectly supervise such persons, up to and including Research management.

e.  As used throughout this Addendum, the term "research report" means any written (including electronic) communication that is furnished by the firm to investors in the U.S. and that includes an analysis of the common stock, any security convertible into common stock, or any derivative thereof, including American Depositary Receipts (collectively, "Securities"), of an issuer or issuers and provides information reasonably sufficient upon which to base an investment decision; provided, however, that a "research report" shall not include:

   i.  the following communications, if they do not include (except as specified below) an analysis, recommendation or rating (e.g., buy/sell/hold, under perform/market perform/outperform, underweight/market weight/overweight, etc.) of individual securities or issuers:

      1.  reports discussing broad-based indices, such as the Russell 2000 or S&P 500 index;

      2.  reports commenting on economic, political or market (including trading) conditions;

3. technical or quantitative analysis concerning the demand and supply for a sector, index or industry based on trading volume and price;

4. reports that recommend increasing or decreasing holdings in particular industries or sectors or types of securities; and

5. statistical summaries of multiple companies' financial data and broad-based summaries or listings of recommendations or ratings contained in previously-issued research reports, provided that such summaries or listings do not include any analysis of individual companies; and

ii. the following communications, even if they include information reasonably sufficient upon which to base an investment decision or a recommendation or rating of individual securities or companies:

1. an analysis prepared for a current or prospective investing customer or group of current or prospective investing customers by a registered salesperson or trader who is (or group of registered salespersons or traders who are) not principally engaged in the preparation or publication of research reports; and

2. periodic reports, solicitations or other communications prepared for current or prospective investment company shareholders (or similar beneficial owners of trusts and limited partnerships) or discretionary investment account clients, provided that such communications discuss past performance or the basis for previously made discretionary investment decisions.

f. As used throughout this Addendum, the term "technical research report" means any written (including electronic) communication that is furnished by the firm to investors in the U.S. and that includes an analysis of the Securities of an issuer or issuers, that is

based solely on prices and trading volume and not on the issuer's financial information, business prospects, or contact with issuer management, and that provides information reasonably sufficient upon which to base an investment decision.

g.  As used throughout this Addendum, the term "quantitative research report" means any written (including electronic) communication that is furnished by the firm to investors in the U.S. and that includes an analysis of the Securities of an issuer or issuers, that relies solely on the systematic application of statistical or numerical techniques to publicly available data, that does not include a qualitative assessment of an issuer's business prospects or contact with issuer management, and that provides information reasonably sufficient upon which to base an investment decision.

h.  As used throughout this Addendum, the term "Institutional Customer" means an entity other than a natural person having at least $10 million invested in securities in the aggregate in its portfolio and/or under management.

i.  As used throughout this Addendum the term "Small Institutional Customer" means an entity other than a natural person having less than $10 million and more than $1 million invested in securities in the aggregate in its portfolio and/or under management.

2.  [Legal/Compliance – Removed.]

3.  Budget.  For the firm's first fiscal year following the entry of the Final Judgment in the SEC's action against Defendant ("Final Judgment") and thereafter, Research budget and allocation of Research expenses will be determined by the firm's senior management (e.g., CEO/Chairman/management committee, other than Investment Banking personnel) without input from Investment Banking and without regard to specific revenues or results derived from Investment Banking, though revenues and results of the firm as a whole may be considered in determining Research budget and allocation of Research expenses.

4.  Physical Separation.  Research and Investment Banking will be physically separated.  Such physical separation will be reasonably

designed to prevent the intentional and unintentional flow of information between Research and Investment Banking.

5. [Compensation – Removed.]

6. [Evaluations – Removed.]

7. Coverage. Investment Banking will have no input into company-specific coverage decisions (i.e., whether or not to initiate or terminate coverage of a particular company in research reports furnished by the firm), and investment banking revenues or potential revenues will not be taken into account in making company-specific coverage decisions; provided, however, that this requirement does not apply to category-by-category coverage decisions (e.g., a given industry sector, all issuers underwritten by the firm, companies meeting a certain market cap threshold).

8. [Termination of Coverage – Removed.]

9. [Prohibition on Soliciting Investment Banking Business – Removed.]

10. Firewalls Between Research and Investment Banking. So as to reduce further the potential for conflicts of interest or the appearance of conflicts of interest, the firm must create and enforce firewalls between Research and Investment Banking reasonably designed to prohibit all communications between the two except as expressly described below:

a. Investment Banking personnel may seek, through Research management (or an appropriate designee with comparable management or control responsibilities ("Designee")) or in the presence of internal legal or compliance staff, the views of Research personnel about the merits of a proposed transaction, a potential candidate for a transaction, or market or industry trends, conditions or developments. Research personnel may respond to such inquiries on these subjects through Research management or its Designee or in the presence of internal legal or compliance staff. In addition, Research personnel, through Research management or its Designee or in the presence of internal legal or compliance staff, may initiate communications with Investment Banking personnel relating to market or industry trends, conditions or developments, provided that such communications are consistent in nature with the types of

communications that an analyst might have with investing customers. Any communications between Research and Investment Banking personnel must not be made for the purpose of having Research personnel identify specific potential investment banking transactions.

b. In response to a request by a commitment or similar committee or subgroup thereof, Research personnel may communicate their views about a proposed transaction or potential candidate for a transaction to the committee or subgroup thereof in connection with the review of such transaction or candidate by the committee.  Investment Banking personnel working on the proposed transaction may participate with the Research personnel in these discussions with such committee or subgroup.  However, the Research personnel also must have an opportunity to express their views to the committee or subgroup outside the presence of such Investment Banking personnel.

c. Research personnel may assist the firm in confirming the adequacy of disclosure in offering or other disclosure documents for a transaction based on the analysts' communications with the company and other third parties (including, e.g., suppliers, customers, accountants, vendors, and regulatory authorities). However:

   (i) If Investment Banking personnel are present or otherwise participate in any such communications by Research personnel with the company and other third parties, (1) such joint communications must be for the due diligence purpose of gathering or confirming information about the company or otherwise related to the proposed transaction, (2) the joint communications must either (a) take place after the receipt by the firm of an investment banking mandate, or (b) in the case of investment banking transactions other than initial public offerings, be in connection either with a block bid, or with a competitive secondary or follow-on offering or similar transaction where the issuer or selling shareholder has contacted the firm to request that the firm submit a transaction proposal, (3) in the case of subclause (c)(i)(2)(a) above, such communications are held in the presence of internal legal or compliance staff, or underwriters' or other counsel on the transaction who are knowledgeable regarding Research and Investment Banking conflicts and the terms of

the Addendum, and (4) in the case of subclause (c)(i)(2)(b) above, the firm's legal or compliance staff reasonably believes that the firm will not have a meaningful opportunity to conduct separate due diligence communications with the relevant parties prior to the award of a mandate for the transaction and such communications are held in the presence of internal legal or compliance staff; and

(ii) To the extent such communications are later communicated by Research personnel to Investment Banking personnel, such communication shall only be made in the presence of internal legal or compliance staff, or underwriters' or other counsel on the transaction who are knowledgeable regarding Research and Investment Banking conflicts and the terms of the Addendum.

d. After the firm receives an investment banking mandate, or (in the case of investment banking transactions other than initial public offerings) in connection with (1) a block bid, or (2) a competitive secondary or follow-on offering or similar transaction where the issuer or selling shareholder has contacted the firm to request that the firm submit a transaction proposal, Research personnel may:

(i) Communicate their views on the pricing and structuring of the transaction to personnel in the firm's equity capital markets group, which group's principal job responsibility is the pricing and structuring of transactions;

(ii) Provide to personnel in the firm's equity capital markets group information obtained from investing customers relevant to the pricing and structuring of the transaction;

(iii) Participate with the equity capital markets group, or independently, in efforts to educate the firm's sales force regarding the transaction, including assisting in the preparation of internal-use memoranda (including presentations in electronic format) and communicating with the firm's sales force, provided that Research personnel may not appear jointly with management of the issuer or Investment Banking personnel other than members of the

equity capital markets group in such communications with the firm's sales force, and provided that the following conditions are satisfied:

1) Such oral communications by Research personnel with the firm's sales force personnel regarding the transaction in which a recommendation or view, whether or not labeled as such, is expressed by such Research personnel regarding the transaction must have a reasonable basis;

2) Such oral communications to a group of ten or more of the firm's sales force must be "fair and balanced", as such phrase is generally understood under NASD Rule 2210(d)(1) and after taking into consideration the overall context in which such communications are made (hereinafter referred to as the "fair and balanced standard"); and

3) All internal-use memoranda (or portions thereof) regarding such transaction that are identified as being the views of Research personnel (such memoranda or portions thereof hereinafter referred to as "internal use Research memoranda") must comply with the fair and balanced standard.

[4 through 6 Removed.]

e.  Research personnel may attend or participate in a widely-attended conference or other widely-attended event attended by Investment Banking personnel or in which Investment Banking personnel participate, provided that the Research personnel do not participate in activities otherwise prohibited herein.

f.  Research and Investment Banking personnel may attend or participate in widely-attended firm or regional meetings at which matters of general firm interest are discussed.  Research management and Investment Banking management may attend meetings or sit on firm management, risk or similar committees at which general business and plans (including those of Investment Banking and Research) and other matters of general firm interest are discussed.  Research and Investment Banking personnel may communicate with each other with respect to legal or compliance issues, provided that internal legal or compliance staff is present.

g.  Communications between Research and Investment Banking personnel that are not related to investment banking or research activities may take place without restriction.

11. Additional Restrictions on Activities By Research and Investment Banking Personnel.

[a and b Removed.]

a.  After the firm receives an investment banking mandate relating to a public offering of securities, Research personnel may communicate with investors regarding such offering provided that Research personnel may not appear jointly with management of the issuer or Investment Banking personnel in such communications, and provided that the following conditions are satisfied:

  1) Such oral communications by Research personnel with investors regarding the offering in which a recommendation or view, whether or not labeled as such, is expressed by such Research personnel regarding the offering must have a reasonable basis; and

  2) Such oral communications to a group of ten or more investors regarding such offering must comply with the fair and balanced standard.
  [3 through 5 Removed.]

12. Oversight.  An oversight/monitoring committee or committees, which will be comprised of representatives of Research management and may include others (but not personnel from Investment Banking), will be created to:

  a.  review (beforehand, where practicable) all changes in ratings, if any, and material changes in price targets, if any, contained in the firm's research reports;

  b.  conduct periodic reviews of research reports to determine whether changes in ratings or price targets, if any, should be considered; and

  c.  monitor the overall quality and accuracy of the firm's research reports;

provided, however, that Sections I.12.a and I.12.b of this Addendum shall not be required with respect to quantitative or technical research reports.

## II.  Disclosure/Transparency and Other Issues

1. Disclosures.  In addition to other disclosures required by rule, the firm must disclose prominently on the first page of any research report and any summary or listing of recommendations or ratings contained in previously-issued research reports, in type no smaller than the type used for the text of the report or summary or listing, that:

   a. "[Firm] does and seeks to do business with companies covered in its research reports.  As a result, investors should be aware that the firm may have a conflict of interest that could affect the objectivity of this report."

   b. With respect to Covered Companies as to which the firm is required to make available Independent Research (as set forth in Section III below): "Customers of [firm] in the United States can receive independent, third-party research on the company or companies covered in this report, at no cost to them, where such research is available.  Customers can access this independent research at [website address/hyperlink] or can call [toll-free number] to request a copy of this research."

   c. "Investors should consider this report as only a single factor in making their investment decision."

2. [Transparency of Analysts' Performance – Removed.]

3. Applicability.  Except as specified in the second and third sentences of this Section II.3, the restrictions and requirements set forth in Section I [Separation of Research and Investment Banking] and Section II [Disclosure/Transparency and Other Issues] of this Addendum will only apply in respect of a research report that is both (i) prepared by the firm, and (ii) that relates to either (A) a U.S. company, or (B) a non-U.S. company for which a U.S. market is the principal equity trading market; provided, however, that such restrictions and requirements do not apply to Research activities relating to a non-U.S. company until the second

calendar quarter following the calendar quarter in which the U.S. market became the principal equity trading market for such company. Notwithstanding the foregoing, Section I.7 [Coverage] of this Addendum will also apply to any research report (other than the Independent Research made available by the firm pursuant to Section III [Independent, Third-Party Research] of this Addendum) that has been *furnished* by the firm to investors in the U.S., but not prepared by the firm, but only to the extent that the report relates to either (A) a U.S. company, or (B) a non-U.S. company for which a U.S. market is the principal equity trading market. Also notwithstanding the foregoing, Section II.1 [Disclosures] of this Addendum will also apply to any research report (other than the Independent Research made available by the firm pursuant to Section III of this Addendum) that has been *furnished* by the firm to investors in the U.S., but not prepared by the firm, including a report that relates to a non-U.S. company for which a U.S. market is not the principal equity trading market, but only to the extent that the report has been furnished under the firm's name, has been prepared for the exclusive or sole use of the firm or its customers, or has been customized in any material respect for the firm or its customers.

a. For purposes of this Section II.3, the firm will be deemed to have furnished a research report to investors in the U.S. if the firm has made the research report available to investors in the U.S. or has arranged for someone else to make it available to investors in the U.S.

b. For purposes of this Section II.3, a "U.S. company" means any company incorporated in the U.S. or whose headquarters is in the U.S.

c. For purposes of this Section II.3, the calendar quarter in which a non-U.S. company's "principal equity trading market" becomes the U.S. market is a quarter when more than 50% of worldwide trading in the company's common stock and equivalents (such as ordinary shares or common stock or ordinary shares represented by American Depositary Receipts) takes place in the U.S.  Trading volume shall be measured by publicly reported share volume.

4. <u>General</u>.

    a. The firm may not knowingly do indirectly that which it cannot do directly under this Addendum.

    b. The firm will adopt and implement policies and procedures reasonably designed to ensure that its associated persons (including but not limited to the firm's Investment Banking personnel) cannot and do not seek to influence the contents of a research report or the activities of Research personnel for purposes of obtaining or retaining investment banking business. The firm will adopt and implement procedures instructing firm personnel to report immediately to a member of the firm's legal or compliance staff any attempt to influence the contents of a research report or the activities of Research personnel for such a purpose.

5. <u>Timing</u>. Unless otherwise specified, the restrictions and requirements of this Addendum will be effective within 120 days of the entry of the Final Judgment, except that Sections I.5 [Compensation], I.6 [Evaluations], I.7 [Coverage], I.8 [Termination of Coverage], I.9 [Prohibition on Soliciting Investment Banking Business], I.11 [Additional Restrictions on Activities by Research and Investment Banking Personnel], and II.4.a [General (subpart a)] and II.7 [Superseding Rules and Amendments] of this Addendum will be effective within 60 days of the entry of the Final Judgment, and Sections II.1.b [Disclosures (subpart b)] and III [Independent, Third-Party Research] of this Addendum will be effective within 270 days of the entry of the Final Judgment.

6. <u>Review of implementation</u>.

    a. The firm will retain, at its own expense, an Independent Monitor acceptable to the Staff of the SEC, the NYSE, the NASD, the President of NASAA, and the New York Attorney General's Office to conduct a review to provide reasonable assurance of the implementation and effectiveness of the firm's policies and procedures designed to achieve compliance with the terms of this Addendum. This review will begin 18 months after the date of the entry of the Final Judgment. The Independent Monitor will produce a written report of its review, its findings as to the implementation and effectiveness of the firm's policies and procedures, and its

recommendations of other policies or procedures (or amendments to existing policies or procedures) as are necessary and appropriate to achieve compliance with the requirements and prohibitions of this Addendum. The report will be produced to the firm and the Staff of the SEC, the NYSE and the NASD within 30 days from the completion of the review, but no later than 24 months from the date of entry of the Final Judgment. (The SEC Staff shall make the report available to the President of NASAA and the New York Attorney General's Office upon request.) The Independent Monitor shall have the option to seek an extension of time by making a written request to the Staff of the SEC.

b. The firm will have a reasonable opportunity to comment on the Independent Monitor's review and proposed report prior to its submission, including a reasonable opportunity to comment on any and all recommendations, and to seek confidential treatment of such information and recommendations set forth therein to the extent that the report concerns proprietary commercial and financial information of the firm. This report will be subject to the protections from disclosure set forth in the rules of the SEC, including the protections from disclosure set forth in 5 U.S.C. § 552(b)(8) and 17 C.F.R. § 200.80(b)(8), and will not constitute a record, report, statement or data compilation of a public office or agency under Rule 803(8) of the Federal Rules of Evidence.

c. The firm will adopt all recommendations contained in the written report of the Independent Monitor; provided, however, that as to any recommendation that the firm believes is unduly burdensome or impractical, the firm may demonstrate why the recommended policy or procedure is, under the circumstances, unreasonable, impractical and/or not designed to yield benefits commensurate with its cost, or the firm may suggest an alternative policy or procedure designed to achieve the same objective, and submit such explanation and/or alternative policy or procedure in writing to the Independent Monitor and to the Staff of the SEC. The firm and the Independent Monitor shall then attempt in good faith to reach agreement as to any policy or procedure as to which there is any dispute and the Independent Monitor shall reasonably evaluate any alternative policy or procedure proposed by the firm. If an agreement on any issue is not reached, the firm will abide by the determinations of the Staff of the SEC (which

shall be made after allowing the firm and the Independent Monitor to present arguments in support of their positions), and adopt those recommendations the Staff of the SEC deems appropriate.

d.  The firm will cooperate fully with the Independent Monitor in this review, including making such non-privileged information and documents available, as the Independent Monitor may reasonably request, and by permitting and requiring the firm's employees and agents to supply such non-privileged information and documents as the Independent Monitor may reasonably request.

e.  To ensure the independence of the Independent Monitor, the firm (i) shall not have the authority to terminate the Independent Monitor without the prior written approval of the SEC staff; and (ii) shall compensate the Independent Monitor, and persons engaged to assist the Independent Monitor, for services rendered pursuant to this Order at their reasonable and customary rates.

f.  For the period of engagement and for a period of three years from completion of the engagement, the Independent Monitor shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with the firm, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such.  Any entity with which the Independent Monitor is affiliated or of which he/she is a member, and any person engaged to assist the Independent Monitor in performance of his/her duties under this Order shall not, without prior written consent of the Staff of the SEC, enter into any employment, consultant, attorney-client, auditing or other professional relationship with the firm, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of three years after the engagement.

g.  Five years after the date of the entry of the Final Judgment, the firm shall certify to the Staff of the SEC, the NYSE, the NASD, the President of NASAA, and the New York Attorney General's Office, that the firm has complied in all material respects with the requirements and prohibitions set forth in this Addendum or, in the event of material non-compliance, will describe such material non-compliance.

7. <u>Superseding Rules and Amendments</u>.  In the event that the SEC adopts a rule or approves an SRO rule or interpretation with the stated intent to supersede any of the provisions of this settlement, the SEC or SRO rule or interpretation will govern with respect to that provision of the settlement and such provision will be superseded.  In addition, each of the SEC, NYSE, the NASD, the New York Attorney General's Office and any State that incorporates this Addendum (or equivalent document) into its settlement of related proceedings against the Defendant agrees that the SEC Staff may provide interpretive guidance with respect to the terms of the settlement as requested by the firm and that, subject to Court approval, the SEC and the firm may agree to amend or modify any term of the settlement, in each case, without any further action or involvement by any other regulator in any related proceeding.  With respect to any term in Section I or II of this Addendum that has not been superseded (as set forth above) within five years of the entry of the Final Judgment, it is the expectation of Defendant, the SEC, NYSE, NASD, New York Attorney General's Office and the States that the SEC would agree to an amendment or modification of such term, subject to Court approval, unless the SEC believes such amendment or modification would not be in the public interest.

In addition, in the event of Court approval after the five-year period referenced above of an amendment or modification that eliminates certain but not all of the then remaining operative provisions of Sections I and II of this Addendum A, then upon the earlier of (i) one year following such Court approval, or (ii) the effective date of new research rules proposed by FINRA in Regulatory Notice 08-55 (October 2008) if such rules address the remaining provisions of the modified Addendum A, it is the further expectation of the SEC, FINRA (which now comprises the former NASD and the member regulation, enforcement, and arbitration functions of the NYSE), the New York Attorney General's Office, and the States that the SEC would agree to a further amendment or modification of this Addendum A, subject to Court approval, unless the SEC believes such amendment or modification would not be in the public interest.

8. <u>Other Obligations and Requirements</u>.  Except as otherwise specified, the requirements and prohibitions of this Addendum shall not relieve the firm of any other applicable legal obligation or requirement.

## III.   Independent, Third-Party Research

1.   <u>Obligation to Make Available</u>.  Each year, for the period ending five years after the effective date of this Section III (as set forth in Section II.5 [Timing] of this Addendum), the firm will be required to contract with no fewer than three independent providers of research ("Independent Research Providers") at a time in order to procure and make available Independent Research (as defined below) to the firm's customers in the U.S. as set forth below.  The firm may satisfy this requirement by contracting with a consolidator that provides access to the Independent Research of at least three Independent Research Providers.  There is, however, no requirement that there be at least three Independent Research Providers for the Common Stock of each Covered Company (as those terms are defined below):

   a.  For common stock and equivalents (such as ordinary shares or common stock or ordinary shares represented by American Depositary Receipts) listed on a U.S. national securities exchange or quoted in Nasdaq (such securities hereinafter, collectively, "Common Stock") and covered in the firm's research reports (other than those limited to quantitative or technical research reports) (an issuer of such covered Common Stock hereinafter called a "Covered Company"), the firm, through an Independent Consultant (as discussed below) will use its reasonable efforts to procure, and shall make available to its customers in the U.S., Independent Research on such Covered Company's Common Stock.  (If the Independent Research Providers drop coverage or do not timely pick up coverage of the Common Stock of a Covered Company, the firm will not be in violation of any of the requirements in this Section III, and may continue to disseminate its own research reports on the Common Stock of the Covered Company without making available any Independent Research on the Common Stock of the Covered Company, if the firm takes reasonable steps to request that the Independent Consultant procure such coverage promptly.)

      i.  For purposes of this Section III, the firm's research reports include research reports that have not been prepared by the firm, but only to the extent that such

reports have been furnished under the firm's name, have been prepared for the exclusive or sole use of the firm or its customers, or have been customized in any material respect for the firm or its customers.

ii. A non-U.S. company for which a U.S. market is not the principal equity trading market shall only be considered a Covered Company if, in the calendar quarter ended March 31, 2004, or in any subsequent calendar quarter during the period that the firm's obligations to procure and make available Independent Research under this Section III are effective, the publicly reported, average daily dollar volume of U.S. trading in such company's Common Stock (measured by multiplying the publicly reported, average daily share volume of U.S. trading during the quarter by the closing price per share of the Common Stock on the last day of the quarter), exceeded $2.5 million, and (b) the outstanding total public float of the Common Stock as of the last day of such calendar quarter exceeded $150 million, or, if the data necessary to calculate the outstanding total public float is not readily available, the market capitalization of the Common Stock as of the last day of such calendar quarter exceeded $150 million.  Further, the firm's obligation to procure and make available Independent Research with respect to such company shall become effective at the later of:  (a) 90 days after the end of the calendar quarter in which the company met the foregoing trading and public float tests; or (b) the effective date of this Section III.

b. For purposes of this Section III, Independent Research means (i) a research report (other than technical research reports) prepared by an unaffiliated person or entity, or (ii) a statistical or other survey or analysis of research reports (including ratings and price targets) issued by a broad range of persons and entities, including persons and entities having no association with investment banking activities, which survey or analysis has been prepared by an unaffiliated person or entity.

c.  The firm will adopt policies and procedures reasonably designed to ensure that, in connection with any solicited order for a customer in the U.S. relating to the Common Stock of a Covered Company, and if Independent Research on the Covered Company's Common Stock is available, the registered representative will have informed the customer, during the solicitation, that the customer can receive Independent Research on the Covered Company's Common Stock at no cost to the customer (the "Notice Requirement").

d.  Notwithstanding the foregoing, the Notice Requirement will not apply to (i) the solicitation of an Institutional Customer unless such Institutional Customer, after due notice and opportunity, has advised the firm that it wishes to have the Notice Requirement apply to it ("Participating Institutional Customer"). Any Institutional Customer who has not so advised the firm is hereinafter referred to as a "Non-Participating Institutional Customer"; (ii) orders as to which discretion was exercised by the firm, pursuant to a written discretionary account agreement or written grant of trading authorization; or (iii) a solicitation by an entity affiliated with the Defendant if such entity does not furnish to its customers research reports under the firm's name, prepared by the firm or for the exclusive or sole use of the firm or its customers, or research reports that have been customized in any material respect for the firm or its customers.

e.  For the purposes of the notice, confirmation, and account statement disclosure requirements with respect to orders as to which discretion was exercised by an investment adviser pursuant to a written discretionary account agreement or written grant of trading authorization, the firm must treat the investment adviser as (regardless of whether the investment adviser is an institutional entity or a natural person): (i) a natural person, if such adviser has $1 million dollars or less invested in securities in the aggregate in its portfolio and/or under management; (ii) a Small Institutional Customer if such investment adviser has less than $10 million and more than $1 million invested in securities in the aggregate in its portfolio and/or under management; and (iii) an Institutional Customer if

such investment adviser has at least $10 million invested in securities in the aggregate in its portfolio and/or under management. Notwithstanding the foregoing, nothing precludes the firm from providing disclosure in addition to the foregoing required minimum.

f.  With respect to a Participating Institutional Customer, the firm may satisfy the Notice Requirement by providing the Participating Institutional Customer with, instead of notice at the time of each solicited order, annual written notice of the availability of Independent Research on Covered Companies' Common Stock.

g.  With respect to a Small Institutional Customer, the firm may satisfy the Notice Requirement by providing the Small Institutional Customer with, instead of notice at the time of each solicited order, annual written notice of the availability of Independent Research on Covered Companies' Common Stock, if such Small Institutional Customer advised the firm that it wishes to receive such annual written notice instead of receiving notice at the time of each solicited order.

h.  Each trade confirmation sent by the Defendant to a customer with respect to an order as to which the Notice Requirement applies will set forth (or will be accompanied by a separate statement, which shall be considered part of the confirmation, that will set forth), as of the time the trade confirmation is generated, the ratings, if any, contained in the firm's own research reports and in Independent Research procured for the firm with respect to the Common Stock of the Covered Company that is the subject of the order (the "Trade Confirmation Disclosure Requirement").

Notwithstanding the foregoing, the Defendant may provide a Small Institutional Customer with, instead of trade-by-trade ratings information on each confirmation, annual written notice of the website(s) where Independent Research ratings information and the firm's ratings information can be found, if such Small Institutional Customer has advised the Defendant that it wishes to receive such annual written notice instead of

trade-by-trade ratings information on each confirmation. With respect to the Common Stock of a Covered Company, the website(s) shall make available separate lists setting forth (with respect to each of the firm's research reports and each Independent Research report of each Independent Research Provider) the date of each research report issued by the firm and each IRP, respectively, the name of the issuer covered in such report, and the rating contained therein (if any) over the preceding twelve months ("Qualifying Website(s)").

If customers of the firm (other than Institutional or Small Institutional Customers) have access to the Qualifying Website(s), the Qualifying Website(s) must also provide access, via hyperlink, to the full text of each Independent Research report (regarding the Common Stock of a Covered Company) of each Independent Research Provider over the preceding twelve months.

With respect to a Participating Institutional Customer, the Defendant may satisfy the Trade Confirmation Disclosure Requirement by providing the Participating Institutional Customer with, instead of trade-by-trade ratings information on each confirmation, annual written notice of the Qualifying Website(s) where Independent Research ratings information and the firm's ratings information can be found.

i.  Each periodic account statement sent by the Defendant to a customer in the U.S. that reflects a position in the Common Stock of a Covered Company will set forth (or will be accompanied by a separate statement, which shall be considered part of the periodic account statement, that will set forth), as of the end of the period covered by the statement, the ratings, if any, contained in the firm's own research reports and in the Independent Research made available by the firm on the Common Stock of each such Covered Company ("Periodic Account Statement Disclosure Requirement"); provided, however, that this requirement will not apply to Non-Participating Institutional Customers or discretionary accounts, and provided further that, with respect to Participating Institutional Customers, the Defendant may satisfy the Periodic

Account Statement Disclosure Requirement by providing Participating Institutional Customers with, instead of ratings information in periodic account statements, annual written notice of the Qualifying Website(s) where Independent Research ratings information and the firm's ratings information can be found.

Notwithstanding the foregoing, the Defendant may satisfy the Periodic Account Statement Disclosure Requirement by providing a Small Institutional Customer with, instead of ratings information in periodic account statements, annual written notice of the Qualifying Website(s) where Independent Research ratings information and the firm's ratings information can be found, if such Small Institutional Customer has advised the Defendant that it wishes to receive such annual written notice instead of ratings information in periodic account statements.

j.  The Independent Research rating(s) disclosed on trade confirmations and periodic account statements as set forth in Section III.1(h) and (i) above shall be chosen by the Independent Consultant.  If only one rating is disclosed by Defendant with respect to a particular Covered Company, it cannot be a consensus rating.

k.  Notice of the availability of Independent Research on Covered Companies' Common Stock will also be included prominently in the periodic account statements of the Defendant's customers in the U.S., in the firm's research reports, and on the firm's website.

l.  The firm will make the Independent Research available to its customers in the U.S. using, for each customer, the means of dissemination equivalent to those it uses to provide the customer with the firm's own research reports, unless the firm and customer agree on another means of dissemination; provided, however, that nothing herein shall require or authorize the firm to comply with the Notice Requirement or make available or disseminate Independent Research at a time when doing so would violate Section 5 of the Securities Act of

1933 or the other provisions of the federal securities laws or the rules and regulations thereunder. If and to the extent the firm is able to make available or disseminate its own research reports on the Common Stock of a Covered Company pursuant to Rule 137, Rule 138(a) or Rule 139(a) under the Securities Act of 1933 and in reliance on Regulation M under the Securities Exchange Act of 1934, then the firm is also authorized and required to make available or disseminate Independent Research on the Common Stock of such Covered Company (even if the Independent Research does not meet the requirements of such Rule). Notwithstanding this Section III.1.l, if the firm determines, because of legal, compliance or similar concerns, not to furnish or make available its own research reports on the Common Stock of a Covered Company for a limited period of time, it shall not be required to make available the Independent Research on such Covered Company for such period of time.

m. If, during the period that the firm's obligations to procure and make available Independent Research under this Section III are effective, the firm terminates coverage of the Common Stock of a Covered Company, the firm, through its Independent Consultant, will make reasonable efforts to continue to procure and make available Independent Research on the Common Stock of such company for a period of at least 18 months after termination of coverage (subject to expiration of the firm's obligations under this Section III).

n. The firm will not be responsible or liable for (i) the procurement decisions of the Independent Consultant (as discussed in Section III.2 [Appointment of Independent Consultant to Oversee the Procurement of Independent Research] of this Addendum) with respect to the Independent Research, (ii) the Independent Research or its content, (iii) customer transactions, to the extent based on the Independent Research, or (iv) claims arising from or in connection with the inclusion of Independent Research ratings in the firm's confirmations and periodic account statements or on the Qualifying Websites(s), to the extent such claims are based on those ratings. The firm will not be required to supervise the production of the Independent

Research procured by the Independent Consultant and will have no responsibility to comment on the content of the Independent Research. The firm may advise its customers of the foregoing in its discretion.

o. The Independent Consultant will not be liable for (i) its procurement decisions, (ii) the Independent Research or its content, (iii) customer transactions, to the extent based on the Independent Research, or (iv) claims arising from or in connection with the inclusion of Independent Research ratings in the firm's confirmations and periodic account statements or on the Qualifying Websites(s), to the extent such claims are based on those ratings, unless the Independent Consultant has carried out such duties in bad faith or with willful misconduct. The firm will indemnify the Independent Consultant for any liability arising from the Independent Consultant's good-faith performance of its duties as such.

2. <u>Appointment of Independent Consultant to Oversee the Procurement of Independent Research</u>. Within 30 days of the entry of the Final Judgment, an Independent Consultant acceptable to the SEC Staff, the NYSE, the NASD, the President of NASAA, the New York Attorney General and the firm shall be named to oversee the procurement of Independent Research from Independent Research Providers. The Independent Consultant will have the final authority (following consultation with the firm and in accordance with the criteria set forth in Section III.3 [Selection of Independent Research Providers] of this Addendum) to procure the Independent Research. The Independent Consultant will not have had any significant financial relationship with the firm during the prior three years and may not have any financial relationship with the firm for three years following his or her work as the Independent Consultant. The Independent Consultant's fee arrangement will be subject to the approval of the Staff of the SEC, the NYSE, the NASD, the President of NASAA, and the New York Attorney General's Office. In the event that an Independent Consultant must be replaced, the replacement shall be acceptable to the Staff of the SEC, the NYSE, the NASD, the President of NASAA, the New York Attorney General's Office and the firm, and shall be subject to these same conditions.

3. <u>Selection of Independent Research Providers</u>.  The Independent Consultant will seek to procure research reports on the Common Stock of all Covered Companies from Independent Research Providers. Independent Research Providers may not perform investment banking business of any kind and may not provide brokerage services in direct and significant competition with the firm.  In addition, the Independent Consultant will use the following criteria in selecting and contracting with Independent Research Providers to provide Independent Research.

   a. whether and to what extent the Independent Research Provider or any of its affiliates or associated persons is engaged in activities (including, but not limited to, activities involving Covered Companies or their securities), or has a business or other relationship with the firm or any of its affiliates or associated persons, that may conflict or create the appearance of conflict with its preparation and publication of the Independent Research;

   b. the desirability of multiple coverage of certain Covered Companies (e.g., by size of company, industry sector, companies underwritten by the firm, etc.);

   c. the extent to which the Independent Research Provider has a client base and revenue stream broad enough to ensure its independence from the firm;

   d. the utility of the Independent Research Provider's Independent Research to the firm's customers, including the inclusion of ratings and price targets in such research and the extent to which the firm's customers actually use the research; and with respect to surveys or analyses described above in Section III.1.b(ii), the extent to which the Independent Research provides customers with a means of comparing the firm's research reports to those published by other persons and entities, including persons and entities having no association with investment banking activities;

   e. the quality and accuracy of the Independent Research Provider's past research, including during the term of the Independent Consultant's tenure;

- 24 -

    f.  the experience, expertise, reputation and qualifications (including, as appropriate, registrations) of the Independent Research Provider and its personnel; and

    g.  the cost of the Independent Research, especially in light of the five-year period set forth in Section III.1 above for the firm to make Independent Research available to its investing customers.

4. <u>Disclosure Language</u>.  Language substantially to the effect set forth below may be used by the firm and its registered representatives to inform the firm's customers of the availability of Independent Research:

    a.  {Disclosure to customers as required by Section III.1.c [Obligation to Make Available subpart c] of this Addendum.}

"There is also independent, third-party research available on this company, which you can get at no cost [from our website/hyperlink] or by calling [toll-free number], or which I can arrange to send to you if you would like."

    b.  {General website and periodic customer account statement disclosure as required by Section III.1.k. [Obligation to Make Available subpart k] of this Addendum.}

"Independent, third-party research on certain companies covered by the firm's research is available to customers of [firm] in the United States at no cost.  Customers can access this research at [our website/hyperlink] or can call [toll-free number] to request that a copy of this research be sent to them."

5. <u>Annual Reporting</u>.  The Independent Consultant will report annually to the Staff of the SEC, the NYSE, the NASD, the President of NASAA, and the New York Attorney General's Office on its selection of Independent Research Providers, the Independent Research it has procured, the cost of the Independent Research it has procured to date, and the Independent Consultant's fees and expenses to date.